# CV-09 3830

 **ORIGINAL**

**VALLI KANE & VAGNINI, LLP**
*Attorneys for Plaintiffs*
**600 OLD COUNTRY ROAD, STE. 519**
**GARDEN CITY, NY 11530**
**(516) 203-7180**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------

**ROBERT YOUNG, STEVEN SCHEIN,**
**MICHAEL O'LEARY, RICHARD FOGELSON,**
**GARY FERRUCCI, AND JOHN BIRBIGLIA,**
**ON BEHALF OF THEMSELVES AND**
**ALL OTHERS SIMILARLY SITUATED,**

              **Plaintiffs,**

    v.

**COUNTY OF NASSAU; NASSAU COUNTY**
**POLICE DEPARTMENT; TOM SUOZZI,**
**Individually and in his Official Capacity;**
**PATROLMENS' BENEVOLENT ASSOCIATION;**
**SUPERIOR OFFICERS' ASSOCIATION;**
**DETECTIVES' ASSOCIATION, INC.;**
**DAN MCCRAY, Individually and in his**
**Official Capacity;**

              **Defendants.**
--------------------------------------------------------------

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 03 2009   ★

LONG ISLAND OFFICE

(SD)

HURLEY, J.
WALL, M.J.

**COMPLAINT**

**Jury Trial Demanded**

Plaintiffs named above, for and on behalf of themselves and other persons similarly situated/all Opt-In Plaintiffs (collectively referred to hereinafter as "Plaintiffs"), by and through their attorneys, VALLI KANE & VAGNINI, LLP, bring this action for damages and other legal and equitable relief from the Defendants' violation of the laws prohibiting age discrimination and the Employee Retirement Income Security Act of 1974 and against the County of Nassau; Nassau County Police Department; Tom Suozzi; Patrolmens' Benevolent Association; Superior Officers' Association; Detectives' Association, Inc., and Dan McCray ("Defendants"):

## INTRODUCTION

1.  This is a collective and class action brought by Plaintiffs challenging acts committed by Defendants amounting to discrimination based on age relating to the disparate treatment of employees over the age of 40.   Defendants' acts of discrimination and harassment are in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA").

2.  Furthermore, Plaintiffs challenge policies and practices set forth by Defendants which, despite the appearance of neutrality, have a disparate impact on employees over the age of 40 or are used disparately to target, harass, and constructively discharge employees over the age of 40. Such policies and practices are in violation of the ADEA.

3.  Further, Defendants have wrongfully denied Plaintiffs the benefits accorded with a employee benefit plan and/or an employee pension benefit plan.   Such actions are in violation of the *Employee Retirement Income Security Act* of 1974 ("ERISA").

## JURISDICTION AND VENUE

4.  This action is brought under the ADEA and ERISA on behalf of the Plaintiffs named above and all persons similarly situated under procedures applicable to age discrimination and ERISA claims.   Declaratory relief is sought under 28 U.S.C. § 2201.

5.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress

providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) under 29 U.S.C. § 201 et. seq.

6.   Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), in as much as this judicial district lies in a State in which the unlawful employment practices occurred.   Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

7.   All conditions precedent to the filing of this lawsuit have been met.   Plaintiffs filed Charges of Discrimination relating to these class claims with the Equal Employment Opportunity Commission ("EEOC").   Right to Sue Letters were issued by the EEOC on or about August 28, 2009 and August 29, 2009.

## PARTIES

8.      Plaintiff Robert Young is a resident of Nassau County and was born on November 27, 1945.  Plaintiff Young filed a claim of age discrimination with the EEOC on or about April 17, 2009.

9.      Plaintiff Steven Schein is a resident of Nassau County and was born on June 25, 1947.  Plaintiff Schein filed a claim of age discrimination with the EEOC on or about April 1, 2009.

10.      Plaintiff Michael O'Leary is a resident of Suffolk County and was born on June 5, 1948.  Plaintiff O'Leary filed a claim of age discrimination with the EEOC.

11.     Plaintiff Richard Fogelson is a resident of Nassau County and was born on September 28, 1953.  Plaintiff Fogelson filed a claim of age discrimination with the EEOC on or about April 3, 2009.

12.     Plaintiff Gary Ferrucci is a resident of Nassau County and was born on June 9, 1948. Plaintiff Ferrucci filed a claim of age discrimination with the EEOC on or about July 1, 2009.

13.     Plaintiff John Birbiglia is a resident of Nassau County and was born on September 16, 1951.  Plaintiff Birbiglia filed a claim of age discrimination with the EEOC on or about April 14, 2009.

14.     Defendant County of Nassau is an employer as defined by the ADEA and maintains offices located at 240 Old Country Road, Mineola, NY 11501.

15.     Defendant Nassau County Police Department ("NCPD") is an employer as defined by the ADEA and maintains offices located at 1490 Franklin Avenue, Mineola, NY  11501.

16.     Defendant Tom Suozzi is the Nassau County Executive with offices at 1550 Franklin Ave., Mineola, NY  11501.

17.     Defendant Patrolmens' Benevolent Association ("PBA") is an employer as defined by the ADEA and maintains offices at 89 East Jericho Turnpike, Mineola, NY  11501.

18.     Defendant Superior Officers' Association ("SOA") is an employer as defined by the ADEA and maintains offices at 777 Old Country Road, Plainview, NY  11803.

19.     Defendant Detectives' Association, Inc. ("DAI") is an employer as defined by the ADEA and maintains offices at 777 Old Country Road, Plainview, NY  11803.

20.    Defendant Dan McCray is the Nassau County Labor Relations Director with offices at One West Street, Mineola, NY.

## FACTS

### Termination Pay Accrual Policy

21.    For decades, NCPD has maintained a termination pay accrual policy ("Accrual Policy") whereby upon termination of their employment employees of the NCPD were paid for earned and accrued days.

22.    The Accrual Policy allowed employees to accrue and bank a certain number of days a year based on specific criteria.

23.    For example, an employee would earn five accrued days a year for every year on the job and two days a year for each year worked without a sick day taken.

24.    An employee could also accrue and bank one half unused sick leave, up to 90 vacation days, 15 personal days, award days, suggestion days, Martin Luther King time, compensatory time and blood donation days.

25.    Rather than collecting pay or taking these earned days off, these days are accrued from year to year.  They are banked and paid to the employee in a lump sum payment upon retirement.

26.    While an employee was technically free to utilize these days throughout their employment, they were discouraged from taking sick time and often punished for doing so. Moreover, if an employee used sick time they could in fact be placed under house arrest.

27.     As a result of this policy, and as encouraged by the NCPD, employees would work towards banking these days in order to supplement their eventual retirement.

28.     As such, numerous employees worked through illnesses and forwent time with their families in order to bank their earned time for their future.

29.     Moreover, employees would bank their compensatory time earned by working extensive overtime rather than taking that time off contemporaneously.

30.     Employees of the NCPD could ultimately bank hundreds of days over their career and significantly supplement their retirement benefits by this lump sum payment permitted by the Accrual Policy.

31.     The older an employee is, all things being equal, the larger their bank of days becomes.

## Termination Pay Cap

32.     Recently, Defendants proposed that the formula used to calculate the amount of termination pay given to Plaintiffs be revised due to "economic" hardships.

33.     At Defendants' request, the County's policy regarding termination pay was amended to cap the total termination pay awarded to an employee to no more than two times an employee's salary including baseline shift differential and holiday pay ("Cap").

34.     This cap affects no employee under the age of 41 years old.

35.     Originally, this Cap was to go into effect on or about November 1, 2009.

36.     However, Defendants reached an agreement to move the effective date of this cap up to July 1, 2009, again citing to the County's mounting fiscal crisis.

37.     Upon information and belief, no efforts were made by Defendants to weigh any other economic recourse in order to save costs.

38.     Upon information and belief, the Defendants' reason for implementing this Cap is a pretext for age discrimination and a method of forcing older employees into retirement.

39.     As a further effort to accomplish this goal, Defendants implemented a penalty for all older employees who elected to stay on and not retire.  Specifically, if an employee subjected to the Termination Pay Cap elected not to retire on or before July 1, 2009, their salary calculation dropped, thereby by costing them additional financial losses if they chose to stay.

### Pretext

40.     There are numerous examples of how the Defendants have been spending money while using the fact that this proposal was necessary to save money.  It is evident that this is a pretext and that the real reason for this cap was to get rid of the older employees.  Some of the examples of how the Defendants were spending money are set forth below.

41.     At the same time Defendants' targeted their over 40 workforce at the NCPD by taking away monies they had already earned, they offered incentives to other employees of the County. In fact, some employees were paid an additional $1,000 per year of service on top of their termination pay if they were to elect a layoff or retirement.

42.    Moreover, at the same time Defendants sought to take away earned pay and benefits from ONE group of exclusively older employees, they admittedly granted numerous and excessive financial benefits to other employees such as salary increases, larger equipment allowances, and additional special assignment pay.

43.    Moreover, Defendants continue to create unnecessary positions within the Department and promote employees numerous levels with significant pay raises.

44.    Upon information and belief, the County has spent millions of dollars on a time record management system that does not work and/or has not been used.  They also continue to waste money on excessive and unnecessary utilities.  For example, may County buildings keep their lights and heat running overnight with no consideration of cost.

45.    Rather than make across the board cost-cutting measures, Defendants specifically targeted their older workforce under the pretext of "fiscal responsibility."

46.    Upon information and belief, an analysis of the decision making process involved in limiting termination pay will reveal that the Defendants explored no other alternatives on how to save money other than to target these older employees.

47.    This decision by the County and the Unions to force officers to retire before July 1, 2009 as the only way Plaintiffs could receive their full earned termination pay is discriminatory based on age.

## Public Comments about Age

48.     The decision made by the Defendants to cap the number of earned days is clearly discriminatory and based on age.

49.     In a Newsday article dated March 16, 2009, Defendant Dan McCray, the Labor Relations Director for Nassau County, stated "The pay caps are intended to prod the **OLDER** and highest paid officers to retire . . . That would allow the County to hire **YOUNGER** officers at lower salaries." (emphasis added)

50.     In the article, Defendant McCray went on to explain that the older workforce "would lose about $100,000 each if they retire after the caps are in place . . . As a result we anticipate record numbers of retirements throughout the department."

51.     The article continues, "He [McCray] said the County expects about 225 retirements this year, double the annual average."

## History of Age Discrimination and Notice

52.     In or about October 2008, the Equal Employment Opportunity Commission announced the settlement and agreement of significant injunctive relief relating to a lawsuit filed against the NCPD by the government relating to claims of age discrimination.

53.     The lawsuit was filed by the EEOC after the EEOC investigated complaints of age discrimination, found that discrimination had occurred and attempted to reach a voluntary settlement.

54.     Specifically, the EEOC asserted that the NCPD was attempting to force out older officers by transferring them into precincts that were less desirable while at the same time replacing them with younger officers.

55.     As a result of the Consent Decree entered as part of the settlement, Defendant Nassau County was required to provide anti-discrimination training to more than 400 supervisors and managers in the NCPD.

56.     In a statement released by the EEOC, they stated "The EEOC hopes this settlement encourages employers to think twice before subtly or overtly pushing senior employees towards retirement in order to save money….."

57.     Most if not all of the Plaintiffs and class members were apprised of the Consent Decree entered against the County and as supervisors were required to participate in the training pursuant to the Decree.

58.     In fact, Tara Comisky ("Comisky"), an EEO Trainer and Liaison for the County, conducted many training courses for NCPD employees holding the position of Sergeant or above.  These training courses took place in late 2008 and early 2009.

59.     Several Plaintiffs and class members participated in this training.

60.     On Martin Luther King Day 2009, Comisky provided a slide presentation to a number of these employees wherein it was clearly stated that it was unlawful to force an employee into retirement.

61.     Upon information and belief, several employees voiced their concerns to Ms. Comisky regarding the impact of the Termination Pay Cap on the older employees.  Specifically that it was forcing them into retirement.

62.     No response or action was taken by Ms. Comisky.

63.     On or about March 18, 2009, Plaintiff Fogelson contacted Defendants Suozzi and McCray in writing regarding the discriminatory nature of the Termination Pay caps and the Defendants' desire to "force" the retirements of hundreds of their older officers.

64.     Plaintiff Fogelson specifically notified them that the policy violated the ADEA and the Consent Decree the County was required to follow.

65.     Neither Defendant Suozzi or Defendant McCray, or any of their representatives, responded to Plaintiff Fogelson.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

66.     Plaintiffs seek to maintain this suit as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves as well as those in the following classes of persons:

> All persons 40 years of age or older who worked for the Nassau County Police Department and were a member of the Patrolmen's Benevolent Association, Superior Officer Association, and/or Detectives Association, Inc., and (1) retired on or before June 30, 2009, or (2) had their Termination Pay capped on or about July 1, 2009. ("Opt-In Class")

67.     Plaintiffs and other members of the collective action are similarly situated because, *inter alia*, they have all been subjected to the same discriminatory policies and practices by Defendants.

68.     Defendants knew that Plaintiffs and other members of the collective action were all over the age of 40 and specifically targeted them because of their age and/or subjected them to the same discriminatory practices. Defendants created a scheme to harass, intimidate and force out members of the collective action specifically because of their age.

69.     Furthermore, Defendants have initiated written and unwritten policies, which despite appearing neutral on their face, have a disparate impact on employees over the age of 40. Defendants' conduct, as alleged herein, was willful and has caused significant damage to Plaintiffs and other members of the collective action.

70.     Plaintiffs also seek to maintain this suit as a class action pursuant to FRCP 23 (a), (b)(2) and (b)(3) on behalf of themselves as well as those in the following class of persons:

> All persons who worked for the Nassau County Police Department and were a member of the Patrolmen's Benevolent Association, Superior Officer Association, and/or Detectives Association, Inc., and (1) retired on or before June 30, 2009 as a result of the Termination Pay Cap, or (2) had their Termination Pay capped on or about July 1, 2009. ("ERISA Class")

71.     The members of the Classes are so numerous that joinder of all members is impracticable under Rule 23(a)(1) and 29 USC §216(b). The exact number of the Class members is in excess of one hundred. Although Plaintiffs do not presently know the names of all Class members, their identities and addresses can be readily ascertained from Defendants' records.

72.     The claims of the named Plaintiffs are typical of those of the Class they represent such that there are questions of law and/or fact that are common to the Class pursuant to Rule 23(a)(2) and 29 USC §216(b) and the claims and/or defenses of the representative parties are typical of the claims and/or defenses of the Class pursuant to Rule 23 (a)(3) and 29 USC §216(b). All of

the claims arise from Defendants' discriminatory and unlawful policies and practices with respect to the circumstances surrounding the denial and/or loss of benefits associated with the Termination Pay Cap.

73.     Plaintiffs will fairly and adequately protect the interests of the Classes they represent pursuant to Rule 23 (a)(4) and 29 USC §216(b).  Plaintiffs have retained counsel experienced and competent in the prosecution of employment discrimination, class actions and complex litigation.

74.     The class and collective action is properly maintainable under Rule 23(b)(2) and 29 USC §216(b) because the party opposing the action has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

75.     Class certification is also appropriate pursuant to Rule 23(b)(3) because the questions of law and fact common to members of the Classes predominate over questions affecting only individual members as set forth herein.

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

> (a)     Without a class action, the Classes will continue to suffer damage and Defendants' violations of law will proceed without remedy;

> (b)     Given (i) the substantive complexity of this litigation, and (ii) the size of individual class members' claims (which though significant individually pale compared to the corpus of Defendants' resources), few if any class

members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

(c)    This action will foster an orderly and expeditious administration of class claims, economies of time, effort and expense, and uniformity of decision;

(d)    Upon adjudication of Defendants' liability, the Court can determine the claims of individual class members, if any; and

(e)    This action presents no difficulty that would impede the Court's management of it as a class and collective action, and it is the best available means by which members of the Classes can seek redress for the harm caused to them by Defendants.

## INDIVIDUAL AND REPRESENTATIVE PLAINTIFFS' FACTS

### Robert Young

77.    Plaintiff Young began his employment with the NCPD on or about June 20, 1969.

78.    Plaintiff Young is an exemplary employee and his current position with NCPD is Detective.

79.    Plaintiff Young is a member of Defendants Detectives Association, Incorporated.

80.    Over the years, Plaintiff Young banked approximately 732 days towards his termination pay.

81.     As of July 1, 2009, if Plaintiff Young did not retire, he would lose approximately 156 days of earned termination pay pursuant to the new policy negotiated by Defendants.

82.     Despite the significant loss of termination pay, Plaintiff Young has elected not to retire at this time.

83.     As such, he has lost approximately $100,000 in earned benefits.

84.     Rather than losing his earned accrued sick time, Plaintiff Young requested that he be able to transfer the time he would lose to a co-worker suffering from Cancer.  Defendants denied Plaintiff Young's request.

### Steven Schein

85.     Plaintiff Schein began his employment with the NCPD on or about February 9, 1973.

86.     Plaintiff Schein was an exemplary employee and his last position with the NCPD was Detective Sergeant.

87.     Plaintiff Schein is a member of Defendants Superior Officers Association and Patrolmen's Benevolent Association.

88.     Over the years, Plaintiff Schein banked approximately 722 days towards his termination pay.

89.     As of July 1, 2009, if Plaintiff Schein did not retire, he would lose approximately 150 days of earned termination pay pursuant to the new policy negotiated by Defendants.

90.    As such, Plaintiff Schein elected to retire on June 29, 2009 in order to avoid losing approximately $100,000 in earned benefits.

91.    Plaintiff Schein had no intention of retiring and only retired as a result of Defendants' public desire to force out older workers.

92.    Plaintiff Schein would have remained on the job for a number of years but for Defendants' decision to punish older workers for staying on the job.

### Michael O'Leary

93.    Plaintiff O'Leary began his employment with the NCPD on or about January 14, 1972.

94.    Plaintiff O'Leary was an exemplary employee and his last position with the NCPD was Detective.

95.    Plaintiff O'Leary is a member of Defendants Detectives Association, Incorporated and Patrolmen's Benevolent Association.

96.    Over the years, Plaintiff O'Leary banked numerous days towards his termination pay.

97.    As of July 1, 2009, if Plaintiff O'Leary did not retire, he would lose all his earned termination pay benefits pursuant to the new policy negotiated by Defendants.

98.    As such, Plaintiff O'Leary elected to retire in order to avoid losing approximately $100,000 in earned benefits.

99.     Plaintiff O'Leary had no intention of retiring and only retired as a result of Defendants' public desire to force out older workers.

100.    Plaintiff O'Leary would have remained on the job for a number of years but for Defendants' decision to punish older workers for staying on the job.

### Richard Fogelson

101.    Plaintiff Fogelson began his employment with the NCPD on or about July 13, 1979.

102.    Plaintiff Fogelson was an exemplary employee and his last position with the NCPD was Sergeant.

103.    Plaintiff Fogelson is a member of Defendants Superior Officers Association and the Patrolmen's Benevolent Association.

104.    Over the years, Plaintiff Fogelson banked approximately 700 days towards his termination pay.

105.    As of July 1, 2009, if Plaintiff Fogelson did not retire, he would lose approximately 132 days of earned termination pay pursuant to the new policy negotiated by Defendants.

106.    As such, Plaintiff Fogelson elected to retire on May 28, 2009 in order to avoid losing approximately $73,000 in earned benefits.

107.    Plaintiff Fogelson had no intention of retiring and only retired as a result of Defendants' public desire to force out older workers.

108.   Plaintiff Fogelson would have remained on the job for a number of years but for Defendants' decision to punish older workers for staying on the job.

### Gary Ferrucci

109.   Plaintiff Ferrucci began his employment with the NCPD on or about June 20, 1969.

110.   Plaintiff Ferrucci is an exemplary employee and his current position with the NCPD is Detective.

111.   Plaintiff Ferrucci is a member of Defendants Detectives Association, Incorporated and the Patrolmen's Benevolent Association.

112.   Over the years, Plaintiff Ferrucci banked numerous days towards his termination pay.

113.   As of July 1, 2009, if Plaintiff Ferrucci did not retire, he would lose his earned termination pay benefits pursuant to the new policy negotiated by Defendants.

114.   Despite the significant loss of termination pay, Plaintiff Ferrucci has elected not to retire at this time.

115.   As such, he has lost his earned termination pay benefits.

### John Birbiglia

116.   Plaintiff Birbiglia began his employment with the NCPD on or about October 12, 1969.

117.   Plaintiff Birbiglia is an exemplary employee and his current position with the NCPD is Detective.

118.    Plaintiff Birbiglia is a member of Defendants Detectives Association, Incorporated and the Patrolmen's Benevolent Association.

119.    Over the years, Plaintiff Birbiglia banked approximately 642 days towards his termination pay.

120.    As of July 1, 2009, if Plaintiff Birbiglia did not retire, he would lose approximately 84 days of earned termination pay pursuant to the new policy negotiated by Defendants.

121.    Despite the significant loss of termination pay, Plaintiff Birbiglia has elected not to retire at this time.

122.    As such, he has lost approximately $41,000 in earned benefits.

**Count I:**

**Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq.**
**(Intentional Discrimination)**

123.    Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

124.    The Plaintiffs and the Opt-In Class are all at least 40 years of age.  They have been targeted and have had the terms and conditions of their employment altered because of their age.  They have suffered adverse employment actions at the direction of Defendants.

125.    Plaintiffs and the Opt-In Class have been damaged by this physically, emotionally and economically in that they have sustained damage to their psyche, stress and other physical pressure.

126.     Plaintiffs and the Opt-In Class have suffered economic losses as a result of being constructively discharged or by losing a portion of their earned Termination Pay.

127.     Plaintiffs request relief as set forth below.

## Count II:

## Violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq.
## (Disparate Impact)

128.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

129.     The conduct alleged herein violates the ADEA as Defendants have, among other things, maintained policies and procedures which when applied, had a discriminatory and disparate impact on older employees including Plaintiffs and the Opt-In Class.

130.     Plaintiffs request relief as set forth below.

## Count III:

## Violation of the *Employee Retirement Income Security Act* of 1974

131.     Plaintiffs repeat and reallege the allegations contained in the paragraphs above, as if fully set forth herein.

132.     The conduct alleged herein violates ERISA, in that it was arbitrary, fraudulent and/or in bad faith.

133.     Defendants have taken what constitutes an employee benefit plan and/or an employee pension benefit plan and wrongfully withheld such benefits as would otherwise be due to the Plaintiffs and Class members.

134.     Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

135.   Preliminary and permanent injunctions against Defendants and their officers, agents, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

136.   A judgment declaring that the practices complained of herein are unlawful and in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq.

137.   Granting an order restraining Defendants from any retaliation against Plaintiffs for participation in any form in this litigation;

138.   All damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' practices, and for emotional distress, physical distress, humiliation, embarrassment, and anguish;

139.   Any applicable front pay to Plaintiffs until such time as they can be placed in the same position they would now have occupied but for Defendants' discriminatory practices;

140.   Exemplary and punitive damages in an amount commensurate with Defendants' ability to pay and so as to deter future malicious, reckless and/or intentional conduct;

141.   Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

142.   Pre-judgment and post-judgment interest, as provided by law; and

143.   Granting Plaintiffs other and further relief as this Court finds necessary and proper.

Dated:   September 1,2009

Respectfully submitted,

Valli Kane & Vagnini, LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180
(516) 706-0248 (fax)

By:_____
James Vagnini (JV-2163)