UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT YOUNG, STEVEN SCHEIN,
MICHAEL O'LEARY, RICHARD FOGELSON,
GARY FERRUCCI, and JOHN BIRBIGLIA,
*on behalf of themselves and all other similarly*
*situated*,                                                      **MEMORANDUM & ORDER**
                                    Plaintiffs,                  **09 CV 3830**

            -against-

COUNTY OF NASSAU, PATROLMENS'
BENEVOLENT ASSOCIATION,
SUPERIOR OFFICERS' ASSOCIATION,
and DETECTIVES' ASSOCIATION, INC.,

                                    Defendants
------------------------------------------------------------X

**APPEARANCES:**

**Valli Kane &Vagnini, LLP**
Attorneys for Plaintiffs
600 Old Country Road, Suite 519
Garden City, NY 11530
By:     James A. Vagnini, Esq.
        Jesse C. Rose, Esq
        Robert J. Valli, Jr, Esq.

**Lamb & Barnosky, LLP**
Attorneys for Defendant County of Nassau
534 Broadhollow Road
Melville, New York 11747
By:     Sharon N. Berlin, Esq.
        Richard K. Zuckerman. Esq.

**Greenberg Burzichelli Greenberg P.C.**
Attorneys for Defendant Patrolmens' Benevolent Assoc.
300 Marcus Avenue, Suite 1W7
Lake Success, NY 11042
By:     Seth H. Greenberg, Esq.

**Certilman, Balin, Adler & Hyman, LLP**
Attorneys for Defendants Superior Officers' Assoc. and Detectives' Assoc., Inc.

90 Merrick Avenue, 9th Fl.
East Meadow, NY 11554
By:     Paul S. Linzer, Esq.
        Candace Reid Gladston, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs, on behalf of themselves and others similarly situated, commenced this action alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, *et seq.*, and for breach of fiduciary duty against the Patrolmens' Benevolent Association ("PBA"), the Superior Officers' Association ("SOA"), the Detectives' Association, Inc. ("DAI") (collectively "Union Defendants"), and the County of Nassau ("the County").  Presently before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons set forth below, the motions are granted and the amended complaint is dismissed without prejudice to replead within 30 days.


## BACKGROUND

The following factual allegations are presumed true for the purposes of this motion.


### I.    TERMINATION PAY

"For decades" the Nassau County Police Department ("NCPD") had a termination pay accrual policy whereby employees were paid a lump sum for earned, accrued, and unused work leave upon retirement.  (Amended Complaint ("Am. Compl.") ¶ ¶ 18, 22.)  Under the accrual policy, employees could bank a certain number of days each year in a number of different categories, including sick leave, vacation, and  personal days, among others. (Am. Compl.  ¶¶

2

19-21.) According to plaintiffs, although employees were "technically free" to use these days as they wished, employees were actively discouraged from taking the time off. (Am. Compl. ¶ 23.) Thus, employees would work through illnesses and forego time with their families in order to bank this time. (Am. Compl. ¶¶ 24-25.) "Employees of the NCPD could ultimately bank hundreds of days over their career and significantly supplement their retirement benefits by this lump sum payment permitted by the accrual policy." (Am. Compl. ¶ 27.)

## II.   THE CAP ON TERMINATION PAY

Recently, the termination pay policy was revised, owing to "economic hardships." (Am. Compl. ¶ 31.) Under the amended policy (the "policy"), the lump sum was capped at no more that two times an employee's final salary, effective July 1, 2009.[1] (Am. Compl. ¶¶ 32, 34-35.) According to the amended complaint, if employees chose to retire before July 1, 2009, then the new cap did not apply and they were entitled to their full termination pay as before. (Am. Compl. ¶ 49.) If they did not choose to retire before that date, however, the cap took effect and they forfeited any termination pay greater than the equivalent of two times their salary at the time of retirement. (Am. Compl. ¶ 49.) Plaintiffs claim that defendants "further" impacted plaintiffs' "financial losses" by making an unspecified reduction to the "salary calculation" of those who did not retire before the policy's effective date. (Am. Compl. ¶ 38.) Plaintiffs also allege that the new policy "affects no employee under the age of 41 years old." (Am. Compl. ¶ 33.)

Plaintiffs bring allegations of both disparate treatment and disparate impact pursuant to the ADEA and the NYSHRL. In addition, plaintiffs allege that the Union Defendants acted adversely to plaintiffs' interests by agreeing to the new policy, effectively trading the "earned

---

[1] An explanation of the genesis of the policy is provided *infra* at pages 7-8.

monies from older employee for additional raises for younger employees," and thereby breaching their fiduciary duty to plaintiffs.  (Am. Compl. ¶¶ 39-40.)

## III.   THE CAPTIONED PLAINTIFFS

The captioned plaintiffs, each of whom is alleged to be over the age of 40 (Am. Compl. ¶¶ 8-13), can be divided into two groups: those who retired before the cap took effect on July 1, 2009, *viz.* O'Leary, Fogelson, and Schein, and those who did not, *viz.* Young, Ferrucci, and Birbiglia.   Those in the first group maintain that they had no intention of retiring and would have remained on the job for a number of years if it did not mean forfeiting between $73,000 and $100,000 worth of termination pay each.  Those in the second group claim that they have lost between $41,000 and $100,000 each by forgoing retirement before July 1, 2009.


## DISCUSSION

## I.   STANDARD OF REVIEW

### a.  *Motion To Dismiss Pursuant To 12(b)(6)*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*citing Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for

> more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (*quoting and citing Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'show[n]' - - that the pleader is entitled to relief." *Id.* at 1950.

In order to survive a motion to dismiss, plaintiffs bringing an action for employment discrimination need not allege specific facts to establish a prima facie case. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002).  This principle was affirmed by the Supreme Court in *Twombly.   See* 550 U.S. at 547, 127 S.Ct. 1955 ("This analysis does not run counter to *Swierkiewicz* . . . .  Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.")(internal quotations and citations omitted); *accord Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010). The Court therefore assesses the plaintiffs allegations to determine not whether they have stated a prima facie case, but whether it is facially plausible and gives fair notice to defendants of the bases for their claims.

### b.  Documents Properly Considered On A Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. GEICO Direct*, No. 06-CV-2915,  2008 U.S. Dist. LEXIS 4169, *6 (E.D.N.Y. Jan. 18, 2008) (same).  A document not appended to the complaint may be considered if the document is

"incorporated [in the complaint] by reference" or is a document "upon which [the complaint] solely relies and . . . is integral to the complaint." *Roth*, 489 F.3d at 509 (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)) (emphasis in the original). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Cortec Indus.*, 949 F.2d at 47 ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce [it] when attacking the complaint for its failure to state a claim, because plaintiff should not be allowed to escape the consequences of its own failure"). "However, 'even if the document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" *DiFolco*, 622 F.3d at 111 (*quoting Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

### c.  Documents Considered in Deciding the Present Motions

Throughout the amended complaint, plaintiffs refer to the amended termination pay policy agreed to by the defendants. This "policy" actually takes the form of three separate collective bargaining agreements, and appending arbitration awards, between the County and each of its Union co-defendants. The collective bargaining agreements with the PBA and the DAI expired on December 31, 2006, and the agreement with the SOA expired on December 31, 2007. (PBA Mot., Ex. 3 at 2; SOA/DAI Mot., Exs. B at 2 and C at 2.) Negotiations between the County and the Unions for successor agreements broke down, leading to interest arbitration proceedings under Article 14 of the New York Civil Service Law (a/k/a the Taylor Law). (PBA

Mot., Ex. 3; SOA/DAI Mot., Exs. B,C.) Three arbitrations panels issued Awards setting forth the terms of the new agreements between the County and the PBA, DAI, and SOA on July 2, 2007, January 9, 2008, and May 6, 2009 respectively. These Awards contain the language of the revised termination pay policies referred to in the amended complaint. Subsequent amended Awards synchronized the effective date of the new termination pay policy for all three Unions to July 1, 2009. In support of their motions to dismiss, defendants have submitted copies of the three Awards. Defendants also attach copies of some of the original EEOC complaints filed as a condition precedent to this action, which plaintiffs refer to in the amended complaint. (*See* Am. Compl. ¶ 7.) There being no dispute as to their authenticity, the Court finds these documents properly considered in these motions to dismiss, given that the documents are incorporated in the amended complaint by reference, relied on by plaintiffs, and integral to the pleading.

## II.  PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE ADEA

The ADEA prohibits "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). "Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *see also id.* at 609 ("[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."). "[C]laims that stress 'disparate impact' involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper*, 507 U.S. at 609; *see also Smith v. City of Jackson*

*Miss.*, 544 U.S. 228 (2005)(holding that both disparate treatment and disparate impact claims may be brought under the ADEA).

It is important to begin the analysis of plaintiffs' ADEA claim by examining whom defendants are allegedly discriminating against in this class action. The amended complaint alleges both disparate treatment and disparate impact on employees "over the age of 40." (Am. Compl. ¶¶ 1-2.) According to plaintiffs, the termination pay policy "affects no employee under the age of 41 years old." (Am. Compl. ¶ 33.) The implication being that those employees over 40 are somehow subject to the policy, and those 40 and under are not. Therefore, the "older" employees (those over 40), were forced to choose between retiring before July 1, 2009 with their termination pay intact, and retiring after that date with a substantial loss to their termination pay. By contrast, because the cap did not "affect" those employees under 41, the "younger" employees did not have to face such tough choices. This dichotomy created by the policy allegedly served as "a method of forcing older employees into retirement." (AC ¶ 37.)

The amended complaint, however, does not detail precisely why those under 41 are not subject to the cap. One inference that can be drawn from this omission is that the language of the Awards explicitly excludes those under 41 from the policy, so that when these younger employees later choose to retire, their lump sum termination payments will not be reduced like their over-40 counterparts. Looking at the allegations through this lens, an incentive would arise for the older employees to retire before July 1, 2009 (the date the cap becomes effective), but no such incentive would ever arise for the younger workers. The older workers would in essence be penalized for staying on the job because of their age, and the younger ones would not. However, an examination of the policy reveals that it is not actually the case that plaintiffs are

disadvantaged in this manner, and an exploration of the exact reason those under 41 are not subject to the cap explains why.

First, and most importantly, the Awards themselves do not draw a line at age 41. In fact, the subsections of the Awards pertaining to termination pay make no reference to age at all. For example, the relevant portion of the PBA Award reads as follows:

> a) Effective January 1, 2009,[2] the divisor utilized to calculate termination pay shall be 2088 hours.
> b) Effective January 1, 2009, termination pay shall not exceed two times an Officer's salary (defined as base salary longevity, shift differential and holiday pay) in his or her final year of service.

(PBA Award ¶ 16, attached to the County's Mot. as Exhibit A.)[3]

If the Awards themselves do not specifically exclude those under 41, the question then becomes why, as plaintiffs allege, does the cap not apply to that age group? The answer is found in plaintiffs' original complaints to the EEOC, filed as a condition precedent to this suit. Therein, the EEOC complaint states:

> The new policy did not force any employee under the age of 41 years old to have to make the decision whether to continue working or to retire to avoid losing large amounts of preciously earned monies. Rather, only older employees over the age of 41 years [sic][4] were forced into deciding whether to retire or sacrifice their termination pay *because only this group would have been eligible to retire*.

(EEOC Complaint of Steven Schein ("EEOC Compl."), ¶ 8, attached to the Reply affirmation of Seth H. Greenberg as Exhibit 1)(emphasis added).

---

[2] The effective date for the termination pay policy was later changed in all three Awards to July 1, 2009.

[3] The Awards pertaining to the other Union defendants contain materially similar, if not identical, language.

[4] Although the EEOC complaints distinguish between employees "under the age of 41" and "over the age of 41," thereby excluding those aged 41, the Court construes this as a scrivener's error and assumes that the plaintiffs intended to create the same line of demarcation in the EEOC as they do in the amended complaint here (*i.e.* those under 41 and those over 40).

Therefore, according to the underlying EEOC allegation, the dissimilar effect of the policy between the two age groups is not the result of an explicit exclusion in the policy based on age, but the artifact of a separate eligibility criteria for retirement that somehow sets 41 as the minimum age at which an employee becomes eligible to retire.[5]   This fact reveals a critical mischaracterization by plaintiffs in their pleading.  It is not that the "[c]ap affects *no* employee under the age of 41." (Compl. ¶ 31(emphasis added).)  Rather, it is that the cap affects *every* employee under the age of 41.  More accurately, the cap affects every employee who does not retire before July 1, 2009, regardless of age.  The cap reduces the termination pay of every employee moving forward after the effective date. The only difference between the older set and the younger set is that the older set has the option to retire before July 1, 2009 and avoid the cap. The younger set does not have this option, however; they have no choice but to accept the cap on their termination pay when they retire.  Those over 40 who choose not to retire before July 1, 2009 will, of course, also have their termination pay capped, but this is imposed not because of their age, but because of their choice not to retire.  The result is that the older workers are actually at an advantage over their younger counterparts, not a disadvantage.

A comparison to other, similar ADEA cases underscores why plaintiffs have failed to state a claim here.  For example, in *Auerbach v. Bd. Of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104 (2d Cir. 1998), teachers who retired in the first year that they met the eligibility criteria for retirement (age 55 and at least 20 years of service), were given a lump sum payment of $12,500. *Id.* at 107-08.  If they chose not to retire in the first year of eligibility,

---

[5] The allegations, however, do not explain why one would not be eligible for retirement until 41. Presumably, employees become eligible for retirement at a certain age, or after accumulating a certain number of years of service, or some combination of the two.  Because none of this information is provided in the pleadings, it is also not clear whether some workers over forty could also not be eligible for retirement because they have not met a minimum number of years of service.

they forfeited receiving the lump-sum payment at a later date.  There, employees over the age of 55 had to retire when they reached 20 years of service or they would forever forfeit the benefit. Their younger, under-55 counterparts who had satisfied the years-of-service requirement, however, could remain working and still retain the option.  The Circuit therefore concluded that "age is a trigger for the denial of the employee benefits." *Id.* 110.

Similarly, in *Abrahamson v. The Bd. of Educ. of The Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66 (2d Cir. 2004), defendants offered employees the option to remain working for three years beyond an employee's first year of retirement eligibility (age 55 and 30 years of service) with a $7,000 yearly bonus.  The problem with that policy was that if one was 55 or over when they completed 30 years of service, they had to elect to enter the program that same year or they were "forever barred" from participating. *Id.* at 73.  By contrast, if one was under 55 when they completed their 30 years of service, they did not have to enter the program until they reached 55. Therefore, in *Abrahamson*, as in *Auerbach*, "age – and not years of service – is the effective trigger." *Id.*

The situation is materially different in the present case[6] for two reasons.  First, in *Abrahamson* and *Auerbach*, age played a central role in both cases and acted as a trigger. Those over a certain age were required to act when they completed their minimum years of service or forego benefits, while those under a certain age at that point could wait and exercise those

---

[6] Notably, in *Abrahamson* and *Auerbach* (as in many other cases involving retirement incentives and benefits), because the plaintiffs had successfully made their *prima facia* case for age discrimination, the disposition hinged on the applicability the Older Workers' Benefit Protection Act ("OWBPA"), 29 U.S.C. §§ 621, 623, which operates as an affirmative defense.  The Court's analysis here, however, need not rest on an application of the OWBPA, because plaintiffs fail to state a substantive claim for age discrimination in the first place. *See Abrahamson v. Board of Educ.*, 374 F.3d 66, 73 (2d Cir. 2004) ("An employee benefit plan that *otherwise discriminates on the basis of age* may still be valid under the ADEA if . . . it is a voluntary early retirement incentive under which an employer need not expend an equal amount as long as the plan is voluntary and consistent with the ADEA's goals of protecting workers from arbitrary age discrimination."(emphasis added)(citing the OWBPA)).

benefits at a later date.  In essence, the younger set was permitted to remain working past their retirement eligibility age and still retain the same benefits as their older cohorts who had to retire immediately.  Here, however, because the policy takes effect for everyone on the same date, July 1, 2009, rather than on a separate date for each person based on his or her birthday, the trigger is not one's age, but the passing of July 1, 2009.  Second, because the policy takes effect on that date, and applies uniformly to all employees moving forward, the advantage conferred on the younger workers in *Abrahamson* and *Auerbach* (*i.e.* the option to continue working after a certain age without loss of benefits) will never be conferred on the younger workers here.  Again, because the older workers were offered a choice that the younger workers were not likewise offered – and presumably will never be – the older workers are in every respect better off than the younger workers, not worse.

Plaintiffs, however, claim that having to make the choice itself between retiring and continuing to work placed them at a disadvantage *vis-à-vis* the younger workers who did not have to make such a choice.  Nevertheless, even assuming that the policy was "actually motivated" by age, *see Kentucky Retirement Systems v. EEOC*, 554 U.S. 135, 143 (2008), imposing such a choice was not violative of the ADEA because the policy actually favored the older employees, not the younger ones.

In 2004, the Supreme Court resolved a split among the Circuits regarding the question of whether the ADEA's broad language prohibiting "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. §623(a)(1), was also meant to prevent "an employer from favoring an older employee over a younger one." *Gen. Dynamics Land Sys. v. Cline*, 540 U.S. 581, 600 (2004). That case presented a fact pattern not unlike the one here.  There, a collective bargaining

13

agreement included a provision removing the company's obligation to pay health benefits to any workers who retired after the new agreement took effect. The one exception to this new policy was that the benefit reduction would not affect those aged 50 and older. *Id.* at 584. The plaintiffs were all under 50, and claimed that the policy unlawfully favored their older cohorts. After an in-depth examination of the ADEA statute and its legislative history, the Court concluded that despite the statute's expansive prohibition against "discrimination . . . because of such individual's age," the purpose and history of the Act, among other things, did not bar employers from "favoring an older employee over a younger one." *Id.* at 600.

The key difference between *General Dynamics* and the instant case is, of course, that here the older workers are bringing the claim, not the younger ones, and therefore it is not a simple matter of reverse discrimination as it was in *General Dynamics*. Nevertheless, the principle in *General Dynamics* still applies here. The crux of plaintiffs' present claim is that the advantages bestowed on their age set forced them to make uncomfortable choices about retirement. However, merely being presented with such choices, particularly through a policy that does not facially discriminate based on age and that actually advantages older workers, does not violate the act. The Seventh Circuit's analysis of a similar case is instructive on this point.

> In *Henn*, all employees over 55 were offered a severance bonus equal to a full-year's salary if they retired within two months after the offer was made. There was no discrimination within the group eligible for early retirement; the amount of an employee's early-retirement benefits was not keyed to his age. Of course, everyone in the eligible group who rejected the offer suffered in the sense that if he retired later on he would not get the bonus. But no one suffered because of his age except employees under 55, who were not eligible for the program . . . . A 56 year old who declined to retire was no better off than a 64 year old who declined to retire; both lost the same thing, a year's bonus. The offer was more attractive, it is true, the nearer one was to leaving; but ordinarily that would be the older worker. A person who plans to retire at 65,

14

> and at age 64 is offered a chance to retire with a full-year salary as
> severance pay, will leap at the chance. But an early retirement plan
> that treats you better the older you are is not suspect under the Age
> Discrimination in Employment Act.

*Karlen v. City Colleges of Chicago*, 837 F.2d 314, 318 (7th Cir. 1988), *superseded on other grounds by* the Older Workers' Benefit Protection Act, 29 U.S.C. §§ 621, 623, (citing *Henn v. National Geographic Society*, 819 F.2d 824 (7th Cir. 1987)).

Therefore, to the extent that this facially neutral policy was at all motivated by age, because the policy itself actually advantages the older workers, defendants did not violate the ADEA and plaintiffs' claims under the Act for disparate treatment and disparate impact must be dismissed.[7]

## III. STATE LAW CLAIMS

Having found that plaintiffs' federal claims should be dismissed, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has the discretion to exercise supplemental jurisdiction over plaintiffs' state law claims, the sound exercise of its discretion dictates that it decline to do so, as resolution of the state claim would require the determination of additional factual and legal issues. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch.,*

---

[7] Although it is not central to their claim, plaintiffs also appear to suggest that the older workers were disparately affected in that they had accumulated more accrual days than younger workers. As alleged in the amended complaint, "[t]he older an employee is, all things being equal, the larger their bank of days becomes." (Am. Compl. ¶ 28.) Based on the facts alleged in the pleading, however, this assertion is simply not true. If all things are indeed equal, in other words, if two employees had given equal years of service and taken an equal amount of accrued days over the course of these years, then they would have the same number of days banked towards their termination pay. Any difference in the two employees' ages would have no bearing in this regard. Therefore, to the extent that plaintiffs are basing an age-related claim on this allegation, such a claim is also dismissed.

*Inc. v. Intercontinental Exch., Inc.*, 497 F.3d 109, 119 (2d Cir. 2007) (holding that dismissal of remaining state claims after the dismissal of federal claims is particularly appropriate where the resolution of the state law claims entails resolving additional legal and factual issues).

## IV.  REMAINING MOTIONS BEFORE THE COURT

As plaintiffs' federal claims have been dismissed under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim, the Court need not reach defendants' motions to dismiss pursuant to Rule 12(b)(1).  Further, the Court hereby dismisses as moot plaintiffs' motion for conditional certification of the class. (Docket No. 90.)  Should plaintiffs' claims survive a motion to amend the complaint, as set forth below, plaintiffs may file a request to reinstate the motion to certify at that time.

## V.  LEAVE TO AMEND

Upon granting a motion to dismiss, leave to replead should be given unless a plaintiff is unable to allege any fact sufficient to support its claim, in which case the complaint should be dismissed with prejudice. *See Cortec*, 949 F.2d at 48.

Although it is difficult to conceive how the policy giving rise to plaintiffs' claims in this case embodies a viable claim of age discrimination, the Court nevertheless grants plaintiffs leave to move to amend within 30 days of the entry of this Order, the Court dispensing with its usual bundle rule.

**CONCLUSION**

For the above reasons, defendants' motions to dismiss are granted and the amended complaint is dismissed without prejudice to replead within 30 days.


SO ORDERED.


Dated: Central Islip, N.Y.
      September 21, 2011

                                                  /s
                                      Denis R. Hurley
                                      United States District Judge